UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:05-CR-56-TS |
| | ) | |
| DUPRECE D. JETT | ) | |

**OPINION AND ORDER**

**A. Background**

In the late afternoon of June 3, 2005, two armed men attempted to rob a Public Service Credit Union, in Fort Wayne, Indiana. Their plans failed, and they fled the crime scene. Soon after, the police arrested in the vicinity of the credit union the Defendant, Duprece Jett, who matched the description of one of the would-be-robbers. He was taken to the police station for interrogation. During the questioning, he made inculpatory statements that he now wants to exclude from trial on the charges of attempted arm bank robbery and brandishing a weapon during that attempt.

To this end, on October 28, 2005, the Defendant moved to suppress his interrogation testimony on the grounds that he was coerced through psychological pressure and inducement into admitting his role in the attempted robbery. On January 17, 2006, the Court held a hearing on the motion, and, after the hearing, allowed the parties to brief their contentions. This briefing is now complete, and having reviewed the parties' arguments, the Court finds no reason for suppressing the Defendant's interrogation testimony.

**B. Facts**

When the police arrested the Defendant in the vicinity of the credit union, he agreed to speak with them but denied any involvement in the attempted robbery. He then was taken to the police station for further questioning. At the station, the Defendant waived his *Miranda* rights and agreed to be interviewed. Detective Vernon Criswell began the interrogation at about 10:00 p.m. About an hour later, Detective James Seay joined in and took over most of the questioning. Detective Criswell remained in the room most of the time.[1]

During the interview, the Defendant was alert and articulate. He maintained a composed demeanor and appeared to be familiar with police proceedings and state and federal laws regarding bank robberies. When left alone, he seemed to be bored: he slouched on the table or even lay on the floor in an apparent attempt to make time pass more quickly.

At first, the Defendant denied any involvement in the attempted robbery. He maintained that he happened to be in the vicinity of the Public Service Credit Union by chance, as his girlfriend's car that he was using broke down in the area. He claimed that he was walking to get help, when police approached and detained him as a suspect. This story contradicted the accounts of witnesses, and Detective Seay told the Defendant that he did not believe him. Detective Seay also called the Defendant's girlfriend who denied loaning her car to him. He relayed his conversation to the Defendant, who insisted that he was telling the truth.

As the interrogation continued, Detective Seay told the Defendant that it was in his best interest to cooperate with the police and that he would appraise the prosecutors of any assistance in solving the case. Several times, Detective Seay expressed his impatience with the Defendant for not answering the questions truthfully by snapping at him, "I'm tired of d—king around with you."

---

[1] Fort Wayne Police Department video-recorded the interview, which the government submitted into evidence as Exhibits 2-4. The Court has watched the entire interview.

However, most of the time, Detective Seay spoke amiably but firmly. At times, frustrated by the Defendant's implausible story, he would get up and walk toward the door. The Defendant then would insist that he stay and hear him out. At one point, Detective Seay asked the Defendant, "Do you want to help yourself out?" He also told the Defendant that "this [case] can either go state or federal; what would you like to do?" He explained that federal charges are more severe because a sentence for an armed robbery includes a consecutive seven years imprisonment, and that a convict must "do" at least 85% of the time imposed. Midway through the interview, Detective Seay told the Defendant, "You can either cooperate and do state time or not cooperate and do federal time."[2] Nevertheless, the Defendant continued to maintain his innocence. However, as the conversation continued, the Defendant admitted that he was in the car at the credit union with someone named Nook, but that he was trying to talk Nook out of the robbery and that he had no other involvement. Later, he admitted that he and Nook got out of the car together but insisted that he did so only to stop Nook.

The Defendant did not know Nook's legal name but offered his help to find it out. He called his girlfriend to inquire about it. He asked her to find out Nook's real name because, at this point, he had to take care of himself and could not worry about others. The girlfriend was no help, but the

---

[2]In his briefs, without describing their context, the Defendant singles out nine statements by Detective Seay that he believes are relevant to his motion to suppress:
- Do you want to help yourself out?
- Now, it just depends on how much time you want to do
- This can either go state or federal; what would you like to do?
- You're toast.
- I'm tired of d—king around with you.
- You can either cooperate and do state time or not cooperate and do federal time.
- That's seven years just for having the gun.
- That's before you do the time on the robbery.
- That's not a day for day but 85% of your time.

(Df. Rep. at 1–2).

officers were able to locate a photograph of a person the Defendant identified as Nook.

During the interview, the Defendant was attentive to Detective Seay. He noted that he was aware of differences in the state and federal penal systems and wondered whether he would be classified as a state or federal offender. He expressed his understanding in differences between being a primary participant and a mere accessory. Furthermore, he insisted that he was telling the truth , as that was in his best interest.

Detective Seay did not believe that the Defendant was telling the whole story and eventually concluded the interview.[3] The Defendant was charged for attempted robbery under Indiana law and taken to the Allen County Jail. However, he was released on a $10,000 bond and ordered to appear for a hearing in state court the following Monday, June 6. Instead, the Defendant skipped the hearing and remained a fugitive for about two months. That same Monday, Detective Seay brought the information about the Defendant and his limited cooperation to the federal prosecutor's office. On June 10, the federal prosecutor filed a criminal complaint in this Court.

Even before his arrest on June 3, the Defendant had numerous run-ins with the police. He has fifteen years of criminal history, ranging from charges of resisting police as a juvenile to battery as an adult. In fact, the Defendant was paroled only two months before the current offense, having been sentenced to prison time for a 1997 state armed robbery.

The Defendant is a graduate of Ball State University with minors in computer applications and business management. He also took some classes in criminal justice.

**C.    Standard for Voluntary Statements**

---

[3]With all the pauses, the interview lasted about three hours.

"A district court may admit a confession into evidence only if the accused made it voluntarily." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001); *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). The "test for a voluntary confession is 'whether the defendant's will was overborne at the time he confessed.'" *United States v. Haddon*, 927 F.2d 942, 945–46 (7th Cir. 1991) (quoting *United States v. Hocking*, 860 F.2d 769, 774 (7th Cir.1988)). Coercive police activity must be causally related to a confession for it to be involuntary within the meaning of the Fourteenth Amendment. *Connelly*, 479 U.S. at 164 ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

Coercion is examined from the perspective of a reasonable person in the position of the suspect. *Huerta*, 239 F.3d at 871. "A confession is voluntary if, in the totality of the circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *Huerta*, 239 F.3d at 871 (quoting *Dillon*, 150 F.3d at 757). In looking at the totality of the circumstances, courts have found relevant a defendant's age, education, intelligence, experience with police, and mental state. The length of detention, nature of interrogations, notification of constitutional rights, and use of physical punishment are also relevant. *Id.*; *United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir. 1994). Finally, "merely informing the accused of the nature of the evidence implicating him, without more, does not constitute coercive police conduct," and "the police are allowed to play on a suspect's ignorance, fears and anxieties so long as they do not magnify these emotionally charged matters to the point where a rational decision becomes impossible." *Sablotny*, 21 F.3d at 752–53. "[P]olice are free to solicit confessions by offering to

5

reduce the charges against the defendant." *United States v. Harris*, 914 F.2d 927, 933 (7th Cir.1990). "Such an offer requires the accused to weigh the cost in giving the government information about his criminal activity that it might otherwise not discover against the benefit in possibly receiving brownie points for cooperation." *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir.1990).

The government must prove voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972)

**C.     The Defendant's Statements Were Voluntary**

The Defendant maintains that the following Detective Seay's statements were coercive "per se":

1.    Do you want to help yourself out?

2.    You are not going home.

3.    You're toast.

4.    Now, it just depends on how much time you want to do.

5.    I'm tired of d—king around with you.

6.    This can either go state or federal; what would you like to do?

7.    There's less time for state charges.

8.    You can either cooperate and do state time or not cooperate and do federal time.

9.    That's seven years just for having the gun.

10.   That's before you do the time on the robbery.

11.   That's not a day for day but 85% of your time.

(Df. Rep. at 1–2). In particular, the Defendant singles out the eighth remark as a clear example of

false or illusory promise of leniency. He believes, that this statement especially impeded his ability to make an informed choice as to whether he was better off talking to the police or clamming up. In his support, he cites *Quartararo v. Mantello*, 715 F. Supp. 449, 460–61 (E.D.N.Y. 1989). (*See* Df. Rep. at 3).

The Constitution does not protect the defendant who regrets providing the police with self-incriminating information, but the defendant whose confession was extracted against his free will. The Defendant does not fall in the latter category. None of Detective Seay's statements—by themselves or all together—had the effect of overpowering his free will, nor would they have overpowered the free will of any reasonable person in the Defendant's position. As is clear from the video-recorded interview, the Defendant, not a novice in the criminal system, was not intimidated by the Detective Seay's occasional harsh tone or his intermittent use of expletives. Nor was he surprised, let alone traumatized, when he was told that he could not go home because multiple witnesses identified him as one of the would-be-robbers. *Cf. Sablotny*, 21 F.3d at 752 ("[M]erely informing the accused of the nature of the evidence implicating him, without more, does not constitute coercive police conduct."). Detective Seay's words, "You're toast" were not an empty threat to frighten the Defendant but a vernacular summary of "we have witnesses who identified you as the 'would-be-robber', so stop lying to me." From the context of the interview, the Defendant could not have understood that expression otherwise.

Similarly, Detective Seay's declaration, "You can either cooperate and do state time, or not cooperate and do federal time" was not a false or illusory promise of leniency that coerced him to confess. The circumstances at issue in *Quartararo,* which the Defendant cites in his support, bear no resemblance to his plight. In that case, the police interrogated a minor without parental consent

7

and without a *Miranda* warning and implied to him that he would not be charged at all if he cooperated with the police in murder investigation. *Quartararo*, 715 F. Supp. at 453–56. Under those circumstances, the minor admitted his complicity in the murder and was later convicted in state court. Subsequently, he petitioned for a writ of habeas corpus to challenge his conviction on the grounds that his confession was involuntary. The district court agreed with the petitioner and directed the state to either retry or to release him within ninety days.

No such issue exists here. The Defendant, twenty-six years old at the time, was informed of his *Miranda* rights and understood that anything he said could be used against him. Nevertheless, he agreed to speak with the police. He was not a fledgling in the criminal system; he has been arrested numerous times and had just been released from imprisonment for armed robbery. He also appeared to have significant knowledge of the differences between the state and federal bank robbery laws and the punishments associated with them.

Moreover, the Defendant has not explained why the Court should think that Detective Seay's offer of state charges, as opposed to federal charges, was false or illusory. Nothing in the interview indicates that Detective Seay did not intend to recommend state charges if the Defendant cooperated. In fact, at the end of the interview, having solicited a limited confession, he told the Defendant that he would be charged by the state and even be allowed to post a $10,000 bond. Detective Seay was acting on his word. In fact, the federal complaint against the Defendant was not filed until June 10, 2005, four days after the Defendant failed to appear in state court for his hearing. The Defendant remained a fugitive until his arrest on August 30, 2005. Understandably, the Defendant does not argue that, despite his attempt to evade further prosecution, he continued to cooperate with the police, for which he should have received leniency.

8

As noted above, "police are free to solicit confessions by offering to reduce the charges against the defendant." *Harris*, 914 F.2d at 933. Detective Seay's comparison of state and federal charges and his offer to the Defendant to cooperate was consistent with this principle. Detective Seay did not promise freedom to the Defendant so that, faced with such a prospect, he could not refrain from admitting his involvement. He only offered more lenient state charges in exchange for the Defendant's cooperation. But even then, the Defendant insisted upon his innocence for quite some time. It was apparent that he was trying to negotiate the best deal for himself without giving away too much. He was not acting as a man whose will was overborne by police coercion but as a suspect able to guard his interests and maximize his leverage. He was weighing the benefits of giving the government information versus incriminating himself in the robbery. The limited information he provided was not the result of an overborne will but of rational intellect and volition. However Detective Seay's statements may appear on paper, when they were pronounced on June 3, 2005, they did not cause the Defendant to speak against his free will.

## CONCLUSION

The government has proved by a preponderance of the evidence that the Defendant's June 3 statements during the interrogation interview were voluntary. Accordingly, the Court denies the Defendant's Motion to Suppress (DE 28).

The Court sets a teleconference on Friday, May 12, 2006, at 1:30 PM Fort Wayne time, to schedule a trial date.

SO ORDERED on May 9, 2006.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT